This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40007**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RUBEN LOPEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew Chandler, District Court Judge**

Raúl Torrez, Attorney General
Lee Green, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Bianca Ybarra, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Following a jury trial, Defendant Ruben Lopez was convicted of aggravated burglary with a deadly weapon, contrary to NMSA 1978, Section 30-16-4(A) (1963); two counts of aggravated assault with a deadly weapon, contrary to NMSA 1978, Section 30-3-2(A) (1963); and possession of a firearm by a felon, contrary to NMSA 1978, Section 30-7-16 (2019, amended 2022). Defendant now appeals arguing: (1) the district court improperly admitted evidence of jail phone calls; (2) the district court violated his right to confrontation by admitting the preliminary testimony of Magnolia Prince and

Adolph Peelle (Victims); (3) he was denied his right to effective assistance counsel; and (4) the district court violated his right to conflict free counsel when it denied his trial counsel's motion to withdraw. We affirm.

## BACKGROUND

**{2}** We provide a brief factual background and discuss the facts in more detail as they become relevant to our analysis. Ms. Prince called the police to report that Defendant had entered her and Mr. Peelle's home without consent in Clovis, New Mexico carrying a .22 long barrel rifle. Defendant wore a thick coat, sunglasses, and a beanie to hide the long gun and cover his face—upon entering their home, Defendant pointed the gun at Ms. Prince and Mr. Peelle. According to Ms. Prince, Defendant came to her home to confront her because he believed Ms. Prince had broken into his home and cars.

## DISCUSSION

### I. Jail Phone Calls

**{3}** Defendant first argues that the district court abused its discretion in admitting jail phone calls he made to Victims. Additionally, he argues that the admission of the phone calls constitutes plain error for a variety of reasons he failed to raise to the district court. According to Defendant, cumulatively, these errors deprived him of his right to a fair trial. We disagree.

**{4}** We begin by addressing the preserved portion of Defendant's argument. When the State sought to admit the jail phone calls, Defendant objected on relevance grounds. The district court overruled Defendant's objection.

**{5}** We review evidentiary rulings for an abuse of discretion. *State v. Hughey*, 2007-NMSC-036, ¶ 9, 142 N.M. 83, 163 P.3d 470. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say that the [district] court abused its discretion by its ruling unless we can characterize the ruling as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). In the context of evidentiary errors, reversal is only justified if an error is harmful. *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. An error, such as the wrongful admission of evidence, is harmless "when there is no reasonable *possibility* the error affected the verdict." *Id.* ¶ 36 (internal quotation marks and citation omitted).

**{6}** "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." Rule 11-401 NMRA. Ordinarily, "[r]elevant evidence is admissible." Rule 11-402 NMRA. Here, the State sought admission of the jail phone calls because, it asserted, the phone calls showed Defendant's consciousness of guilt

as Defendant discussed the facts underlying the incident and encouraged Victims not to testify at trial. Defendant asserts that the jail phone calls "did not shed light on any element of the crimes charged," however, upon our independent review of the jail phone calls, it is clear that the subject of the calls concerns the underlying incident. While other topics of conversation come up briefly throughout both calls, the content of the phone calls is centered on Defendant discussing both the incident and Victims' intent to testify at trial.

**{7}**　For these reasons, we cannot say that the district court abused its discretion by ruling that the jail phone calls were relevant. *See State v. Balderama*, 2004-NMSC-008, ¶ 23, 135 N.M. 329, 88 P.3d 845 ("All relevant evidence is generally admissible, unless otherwise provided by law."); *see also id.* ("Any doubt whether the evidence is relevant should be resolved in favor of admissibility.").

**{8}**　Next, Defendant argues that the district court's admission of the phone calls constitutes plain error for several reasons. *See* Rule 11-103(E) NMRA. Because "[p]lain error is an exception to the general rule that parties must raise timely objection to improprieties at trial, . . . it is to be used sparingly." *State v. Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M. 719, 204 P.3d 44 (internal quotation marks and citation omitted). We will not reverse based on plain error unless an error "affect[ed] a substantial right" of the defendant. Rule 11-103(E). In other words, such erroneous admission of such evidence must "constitute[] an injustice that create[s] grave doubts concerning the validity of the verdict." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (internal quotation marks and citation omitted).

**{9}**　Particularly, Defendant calls attention to various statements he made involving his mother's health, a debt owed to Ms. Prince for a motorbike, plea offers made by the State, his being "strung out" in the past, and the possible sentence he faced. Even if we were to assume without deciding that the district court's admission of these statements was erroneous, Defendant has failed to demonstrate that the admission of such evidence calls the validity of the verdict into question. *See State v. Muller*, 2022-NMCA-024, ¶ 43, 508 P.3d 960 (providing that the burden is on the defendant asserting plain error). Defendant merely asserts that "[o]nce the jail calls were played for the jury it was clear they had no probative value and only served to present the jury with inadmissible character evidence and improper information about plea negotiations and the consequences of their verdict." Defendant contends that because the district court permitted the jury to hear such evidence "without objection and without a curative instruction, they became evidence the jury could fully consider when deciding [his] guilt or innocence." On appeal, Defendant simply has not demonstrated that "admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *State v. Garcia*, 2019-NMCA-056, ¶ 10, 450 P.3d 418 (internal quotation marks and citation omitted).

## II.　Preliminary Hearing Testimony

**{10}** Defendant also argues that the district court violated his constitutional right to confrontation by admitting the preliminary hearing testimony of Victims. Defendant objected to the preliminary hearing testimony at trial based on confrontation grounds. "Questions of admissibility under the Confrontation Clause are questions of law, which [appellate courts] review de novo." *State v. Aragon*, 2010-NMSC-008, ¶ 6, 147 N.M. 474, 225 P.3d 1280, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110.

**{11}** "Under the Confrontation Cause, an out-of-court statement that is both testimonial and offered to prove the truth of the matter asserted may not be admitted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *State v. Smith*, 2016-NMSC-007, ¶ 42, 367 P.3d 420 (internal quotation marks and citations omitted). In making a finding that a witness is unavailable, the district court "may take into consideration the totality of the circumstances" when determining if the state "was diligent in attempting to produce a witness for trial." *State v. Lopez*, 1996-NMCA-101, ¶ 25, 122 N.M. 459, 926 P.2d 784.

**{12}** Defendant argues that the district court "abused its discretion by finding the witnesses unavailable" because although both witnesses had been served with subpoenas, "the State made no effort to enforce them by requesting material witness warrants or having the sheriff's office secure their presence at trial." *See* Rule 11-804(A)(5)(a) NMRA (defining "[u]navailability as a witness" when a declarant "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance, in the case of a hearsay exception under Rule 11-804(B)(1) or (5)"). We disagree.

**{13}** Here, as Defendant acknowledges, the State filed its notice of intent to use preliminary hearing testimony six days before trial. In the notice of intent, the State asserted that Victims would not allow themselves to be served and that it had obtained jail phone calls in which Defendant called both Victims and persuaded them not to testify at trial. According to the State, after the first trial setting was continued due to an undocumented illness suffered by Ms. Prince, both she and Mr. Peelle became very uncooperative—Ms. Prince contacted the State's victim advocate and stated that she no longer wished to assist or participate in the trial.

**{14}** The State managed to track down both Victims and serve them with subpoenas, but at the time they were served, they both again indicated that they did not intend to appear at trial. At this point, the State asked its investigators to look at five jail phone calls that had been made by Defendant to Victims—in these conversations Defendant discussed the underlying events and Victim's intent to testify at trial. Two of these phone calls were admitted at trial. In both phone calls, Defendant seeks reassurance from Ms. Prince that she will not testify at trial,[1] assures Mr. Peelle that he does not have to be

---

[1] During the phone call, Defendant tells Ms. Prince that the State will try to get in contact with her and Defendant then asks for her reassurance—"but you got me on all that though for real? Ms. Price responds, "Yeah."

present at trial,[2] and insinuates that as long as they do not testify, they have nothing to worry about.[3]

**{15}** We hold that, under the totality of the circumstances, this evidence is sufficient to support the district court's decision that the State's attempts to secure Victim's presence for trial were in good faith and diligent. *See Lopez*, 1996-NMCA-101, ¶ 25. Here the State filed an emergency motion to continue the trial when it was informed that Ms. Prince could not attend because of an illness, tried to get in contact with Victims on multiple occasions, and managed to serve both Victims with subpoenas despite their attempts to evade service. Therefore, we conclude that the district court did not err in ruling that Victims were unavailable under Rule 11-804(A)(5)(a).

**{16}** Next, we address the admissibility of Victims' preliminary hearing testimony. A "statement of an unavailable witness is admissible if the unavailable witness's 'testimony was given as a witness at another hearing of the same or a different proceeding and if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross- or redirect examination.'" *State v. Lopez*, 2011-NMSC-035, ¶ 5, 150 N.M. 179, 258 P.3d 458 (text only) (quoting Rule 11-804(B)(1) (2011)); *see* Rule 11-804(B)(1).

**{17}** Although Defendant acknowledges that he cross-examined the absent witnesses at the preliminary hearing, he argues that he "only cross-examined the witnesses for five minutes at the preliminary hearing and recovered no useful information for trial." He also asserts that he discovered new "impeachment material" concerning a phone call that Ms. Prince claimed Defendant made her place on the day of the incident.

**{18}** During trial, defense counsel stated that he had only just met Defendant in December and had not had time to speak with him before the preliminary hearing; the only information that he had about the case was from the criminal information. Defense counsel acknowledged that his cross-examination was not limited during the preliminary hearing, but nonetheless asserted that his cross-examination at trial would be "more penetrating" and "much more detailed" because he knows more information since discovery had taken place as he has since found out that Ms. Prince admitted that she was never forced to make a phone call by Defendant on the date of the incident.

**{19}** The district court admitted the preliminary testimony as an exception to the hearsay rule, citing to Rule 11-804(B)(1), based on its finding Defendant was freely able

---

2Defendant stating to Mr. Peelle, "As far as that piece of paper goes that they gave you on Thursday when they went over there and served you, you do not have to fucking be there, I promise you. If you read on the bottom of it, it says if you fail to appear, a warrant may be issued for your arrest? Because they can't force you to show up. That's . . . like false imprisonment, that's like holding somebody hostage. You can't . . . and the State can't do that . . . I promise you they can't."

3Defendant stating to Mr. Peelle, "But you don't got nothing to worry about though bro I promise you, you don't. Like I've had my family members that have come in and out of jail and they're like, hey this and that. Yeah, I tell 'em what I'm here for, but they . . . they . . . I kept a lot of people from doing stupid shit since I been in here. And I promise you I will continue to do that and you don't have nothing to worry about. Just let this be a dead issue, bro, please."

to cross-examine both Victims without any restrictions at the preliminary hearing "about whether any crime was committed and whether Defendant was involved . . . therefore [Defendant] had an opportunity and similar motive to cross-examine [the Victims] at this hearing as he would have at trial." The district court also made a finding that Victims absence was due, in a large part, by Defendant's encouragement not to testify.

{20}    Our Supreme Court has recognized "that absent extraordinary circumstances preliminary hearing testimony may be admitted at trial if the witness is unavailable because the motive to cross-examine is similar." *Lopez*, 2011-NMSC-035, ¶ 6 (internal quotation marks and citation omitted). While Defendant asserts that defense counsel's knowledge of the case increased after the preliminary hearing because of new information regarding a purported phone call that Ms. Prince had claimed Defendant made her make at the time of the incident—Defendant fails to demonstrate the existence of extraordinary circumstances that warrant an exception to the rule. *See id.* Defense counsel admitted that the cross-examination at the preliminary hearing was to determine the truth about the allegations as alleged in the criminal complaint and in regard to whether he committed the crimes. Defense counsel admitted he did not have a different motive to cross-examine Victims and that nothing prevented him from asking Ms. Prince about the phone call during the preliminary hearing.

{21}    Moreover, Defense counsel admitted that his cross-examination was not limited in any way during the preliminary hearing. On appeal, Defendant does not otherwise specify why the motive to cross-examine Victims would have been any different at trial—per Defendant's own admission, the preliminary hearing testimony was introduced at trial to establish the same factual information from Victims about what occurred and Defendant's involvement. We therefore conclude that the admission of Victims' preliminary hearing testimony trial was not erroneous under Rule 11-804(B)(1) and did not violate Defendant's confrontation rights.

### III.    Ineffective Assistance of Counsel

{22}    Defendant argues that his trial counsel's performance was deficient in six ways— he asserts his counsel (1) failed to prepare for the preliminary hearing, (2) failed to request a hearing for a motion to withdraw, (3) failed to listen to the jail phone calls, (4) failed to object to the admission and publication of the jail phone calls aside from relevance grounds, (5) failed to timely disclose evidence that would have aided Defendant's defense, and lastly (6) was unfamiliar with Defendant's criminal history. We address each of Defendant's claims in turn.

{23}    We review ineffective assistance of counsel claims de novo. *State v. Martinez*, 2007-NMCA-160, ¶ 19, 143 N.M. 96, 173 P.3d 18. When evaluating such claims on direct appeal, we evaluate facts that are part of the record, and "require [a d]efendant to show, first, that his counsel's performance was deficient and, second, that this deficiency prejudiced his defense." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition,

although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Id.* "To show prejudice, we look to the record to determine whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Garcia v. State*, 2010-NMSC-023, ¶ 41, 148 N.M. 414, 237 P.3d 716 (internal quotation marks and citation omitted).

**{24}** Defendant has failed to show that his counsel's performance was deficient for all six claims. Counsel's "performance is deficient if [their] conduct falls below that of a reasonably competent attorney." *State v. Dylan J.*, 2009-NMCA-027, ¶ 37, 145 N.M. 719, 204 P.3d 44. "We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (text only) (citation omitted).

**{25}** First, Defendant asserts his trial counsel failed to prepare for the preliminary hearing, "which significantly prejudiced [Defendant] since the preliminary testimony was the only testimony from [Victims] available at the time of trial." Defendant calls attention to the fact that his trial counsel did not meet with Defendant prior to the preliminary hearing and only cross-examined Victims for five minutes. According to Defendant, "it is obvious [trial] counsel did not prepare for the preliminary hearing, aside from reviewing the complaint."

**{26}** There were only three business days between trial counsel entering his appearance in this case on November 22, 2019 and the preliminary hearing that occurred on December 2, 2019. At trial, counsel stated that because he entered his appearance in this case so close to the preliminary hearing, he did not have a chance to meet with Defendant or to conduct an independent investigation of the case. *See State v. Ayon*, 2023-NMSC-025, ¶ 20 ("Preliminary hearings take place on a brisk timeline, especially when the defendant is incarcerated."). However, trial counsel stated that he had reviewed the criminal information before the preliminary hearing. Beyond citing to the short cross-examinations of Victims and trial counsel not having met with Defendant before the preliminary hearing, Defendant has not shown, based on the limited record on appeal, that trial counsel's preparation for the hearing was deficient. *See State v. Hernandez*, 1993-NMSC-007, ¶¶ 24-25, 115 N.M. 6, 846 P.2d 312 (declining to presume ineffective assistance based on counsel's insufficient time to prepare, where counsel had almost a year, but was inexperienced and claimed more time was needed); *see also State v. Orosco*, 1991-NMCA-084, ¶ 36, 113 N.M. 789, 833 P.2d 1155 ("Without more facts indicating that trial counsel's actions were truly an error and not a strategy, we cannot say there was ineffective assistance of counsel on this basis."), *aff'd*, 1992-NMSC-006, ¶ 32, 113 N.M. 780, 833 P.2d 1146.

**{27}** Turning to Defendant's next claim of error, he argues that trial counsel failed to request a hearing on a motion to withdraw. Defendant asserts that when his trial counsel moved to withdraw, trial counsel "failed to request a hearing for" the motion and

as a result, the motion was denied without reason. According to Defendant, "[w]here the motion identified a breakdown of the attorney-client relationship, a form of conflict, [trial counsel's] failure to request a setting in order to ensure [Defendant's] right to conflict free counsel was ineffective and directly prejudiced" Defendant's defense and the outcome of his trial.

{28}    Defendant points to no evidence in the record concerning trial counsel's decision not to request a hearing on the motion to withdraw. In the motion, trial counsel states that he "was in the process of drafting [m]otions to be filed and not even 24 hours after this request was made . . . Defendant contacted [c]ounsel and was upset and stated that he wanted a new attorney." Moreover, trial counsel stated that he "attempted to meet all requests made by . . . Defendant and attempted to maintain the attorney/client relationship to no avail." This is the only evidence in the record concerning the motion to withdraw that Defendant cites to on appeal. *See State v. Bahney*, 2012-NMCA-039, ¶ 49, 274 P.3d 134 ("While we are willing to review matters of record for prima facie evidence of ineffective assistance of counsel, we will not afford the same benefit to arguments based on matters outside the trial record."). There are many reasons why trial counsel may not have requested a hearing, including counsel's judgment that the motion would be groundless and unsuccessful. *See State v. Paredez*, 2004-NMSC-036, ¶ 22, 136 N.M. 533, 101 P.3d 799 (stating we cannot conclude that trial counsel erred "when a plausible, rational strategy or tactic can explain the conduct of defense counsel" (internal quotation marks and citation omitted)); *see also Roybal*, 2002-NMSC-027, ¶ 21 ("Indeed, if on appeal we can conceive of a reasonable trial tactic which would explain the counsel's performance, we will not find ineffective assistance."). Without more, we cannot say that trial counsel's decision not to request a hearing on the motion was erroneous. *See Orosco*, 1991-NMCA-084, ¶ 36, ("Without more facts indicating that trial counsel's actions were truly an error and not a strategy, we cannot say there was ineffective assistance of counsel on this basis.").

{29}    Defendant next claims that "it appears from the . . . record that [trial counsel failed to listen to the jail calls before they were played at trial." Defendant points to no evidence that trial counsel failed to listen to the jail phone calls besides "[t]he timing and manner of [trial counsel's]" objection when the State played the phone calls at trial. After the State played the phone calls, trial counsel, during a bench conference, stated to the district court, "I listened very carefully to both of those recordings, I did not hear one word that was a statement against interest on the part of [Defendant]." According to Defendant, trial counsel's objection "indicates that he relied on the publication of the calls to the jury to ascertain their contents, and therefore only objected after they were published and he had determined that the offered hearsay objection did not apply." However, trial counsel had previously objected to the admission of the phone calls on relevance grounds. Additionally, as the State points out, at the preliminary hearing, trial counsel admitted that based upon the phone calls he had listened to, he believed Defendant had engaged in some wrongdoing by persuading Victims not to testify at trial. Defendant has not shown that trial counsel failed to listen to the jail phone calls. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517 ("For a successful ineffective

assistance of counsel claim, a defendant must first demonstrate error." (internal quotation marks and citation omitted)).

**{30}** Defendant's fourth claim of error is that trial counsel failed to object to the admission of the jail phone calls aside from relevance grounds "though the admission violated Rules 11-403 and 11-404 [NMRA]." There are many reasons trial counsel may not have objected to the admission of the phone calls on Rules 11-403 and 11-404 grounds, including counsel's judgment that such objections may be without merit, and Defendant has not established that counsel's tactic was unreasonable or implausible. *See Paredez*, 2004-NMSC-036, ¶ 22 (stating we cannot conclude that trial counsel erred "when a plausible, rational strategy or tactic can explain the conduct of defense counsel" (internal quotation marks and citation omitted)); *see also State v. Peters*, 1997-NMCA-084, ¶ 40, 123 N.M. 667, 944 P.2d 896 (observing that whether to object to the admission of evidence is a matter of trial tactics).

**{31}** Defendant's fifth claim of error is that "[trial counsel] failed to timely disclose evidence that could have aided [his] defense." During trial, when the State mentioned its intent to admit the jail phone calls, trial counsel stated, "If [the State] plans to introduce recordings from the telephone conversation between [Defendant] and Ms. Prince, I have a recording of a phone conversation between [Ms. Prince and Defendant] and I would like to have that played also . . . it's on my cell phone." According to Defendant, this phone call was "exculpatory" and "would have impeached statements made by [Ms. Prince] during her preliminary hearing."

**{32}** Even assuming trial counsel performed deficiently by failing to get the phone call admitted was deficient, Defendant has failed to establish prejudice. He merely asserts that the "recording impeached the underlying allegations against [Defendant], which could have changed the result of trial" and that such error was prejudicial. In fact, Defendant fails to specify in his briefing which statements made by Ms. Prince would have been impeached by the phone call. Moreover, even if this evidence would have been admitted, the impact that such evidence would have had on the result of trial is entirely speculative. *See State v. Elliot*, 1977-NMSC-002, ¶ 10, 89 N.M. 756, 557 P.2d 1104 (noting that appellate courts "will not speculate about hypothetical evidence that might have been developed at the defendant's trial"). Defendant did not make the call part of the record, which makes it impossible for us to determine whether it might have been persuasive enough to the jury to satisfy the prejudice prong. *See State v. Druktenis*, 2004-NMCA-032, ¶ 44, 135 N.M. 223, 86 P.3d 1050 ("It is [the d]efendant's obligation to provide this Court with a sufficient record proper."); *State v. Hunter*, 2001-NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296 ("Matters not of record present no issue for review."). Defendant must "show a reasonable probability that but for [his] attorney's objectively unreasonable conduct, the result of the proceedings would have been different." *See State v. Morgan*, 2016-NMCA-089, ¶ 15, 382 P.3d 981 (internal quotation marks and citation omitted). Defendant has failed to do this. *See id.*

**{33}** Defendant's sixth and final claim of error is that trial counsel failed to investigate Defendant's criminal history. According to Defendant, "[trial counsel] did not know [his]

criminal history and stipulated to admitting his prior convictions to satisfy the 'felon' elements of felon in possession of a firearm." On the morning of trial, the State argued that it had three certified prior felonies to offer as evidence for a requisite element of the felon-in-possession charge. When the district court asked defense counsel if it would object to admission of the prior felony convictions, trial counsel stated, "I was not aware that there were three. I thought that there were two." The State later corrected its prior statement and said that there were only two prior felonies and that third conviction was for a petty misdemeanor, which could not be used to prove the felon-in-possession charge. Based on the foregoing, we cannot say that trial counsel was unaware of Defendant's criminal history. *See Arrendondo*, 2012-NMSC-013, ¶ 38 ("For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error." (internal quotation marks and citation omitted)).

## IV. Conflict-Free Counsel

**{34}** Lastly, Defendant argues that the district court violated his right to conflict-free counsel when it denied his trial counsel's motion to withdraw. "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees defendants in criminal proceedings the right to effective assistance of counsel." *State v. Dyke*, 2020-NMCA-013, ¶ 30, 456 P.3d 1125 (text only) (citation omitted). This includes "[t]he right to effective assistance of counsel free from conflicts of interests." *State v. Sosa*, 1997-NMSC-032, ¶ 20, 123 N.M. 564, 943 P.2d 1017, *abrogated on other grounds by State v. Porter*, 2020-NMSC-020, ¶ 7, 476 P.3d 1201. Under the conflict-based ineffective assistance of counsel test, "[a] defendant must show that counsel[] actively represented conflicting interests and that an *actual* conflict of interest adversely affected [their] lawyer's performance." *Rael v. Blair*, 2007-NMSC-006, ¶ 11, 141 N.M. 232, 153 P.3d 657 (emphasis added) (internal quotation marks and citation omitted).

**{35}** Here, Defendant fails to identify the nature of defense counsel's conflict of interest. He merely refers to the motion to withdraw, asserts that he could not trust trial counsel, and that if the district would have inquired into the basis of the motion to withdraw "it would have been obvious . . . that [Defendant] was not confident in his [counsel's] representation." *See State v. Hernandez*, 1983-NMSC-101, ¶ 7, 100 N.M. 501, 672 P.2d 1132 ("'[T]he possibility of conflict is insufficient to impugn a criminal conviction. To demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected their lawyer's performance.'" (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980))). Because of Defendant's lack of a developed argument concerning this claim, we decline to further address it. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (explaining that we will "not review unclear or undeveloped arguments [that] require us to guess at what a part[y's] arguments might be"); *see also Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("It is of no benefit either to the parties or to future litigants for [an appellate court] to promulgate case law based on [its] own speculation rather than the parties' carefully considered arguments.").

**CONCLUSION**

**{36}** For the foregoing reasons, we affirm.

**{37}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**